STAN G. ROMAN (SBN 87652) sroman@kksrr.com
THOMAS H. SLOAN (SBN 58322) tsloan@kksrr.com
TRACY M. CLEMENTS (SBN 184150) tclements@kksrr.com
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, 4th Floor
San Francisco, CA  94104
Telephone:  (415) 249-8330
Facsimile:  (415) 249-8333

Attorneys for Defendant
PETER KIRITCHENKO

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| UNIVERSAL TRADING & INVESTMENT CO., Plaintiff, v. PETRO MIKOLAYEVICH KIRITCHENKO, et al., Defendants. | Case No.: C99-3073 MMC<br><br>**OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR STAY OF EFFECT OF ORDER AND FOR REVIEW UNDER FRCP 72(A)**<br><br>Date:  Not set<br>Time:  Not set<br>Courtroom:  7, 19th Floor<br>Judge:  Hon. Maxine M. Chesney |
|---|---|

## I. INTRODUCTION

Defendant Peter Kiritchenko (hereinafter, "defendant") respectfully requests that the Court deny plaintiff's "emergency motion" to overrule the Order entered by Magistrate Judge Laporte on November 14, 2006 ("the November 14 Order").  The November 14 Order, which granted defendant's Motion to Release Attachment on the Jackson Street Property ("Motion to Release Attachment") was properly considered and decided, and should be affirmed.  Plaintiff's motion offers the same arguments that have already been heard and rejected by Magistrate Judge Laporte. Moreover, plaintiff fails to mention several key facts that support Magistrate Judge Laporte's Order, including the fact that if the attachment on defendant's property is not released in time for the close

of escrow today (November 15), the sale will be lost. In short, Magistrate Judge Laporte's decision is correct, and should not be overruled.

## II.   FACTUAL AND PROCEDURAL BAKGROUND

Defendant brought his Motion to Release the Writ of Attachment on the property located at Unit 2, 1901 Jackson Street, San Francisco, CA (Assessor's Parcel Nos. 5-601-22) ("the Jackson Street Property"). In August, defendant entered into a contract with a prospective buyer for the Jackson Street Property, with escrow set to close on November 15, 2006, subject to the release of the attachment on that property. Pursuant to an earlier order by Magistrate Judge Laporte, defendant had previously sold a similarly attached property on the condition that the net sale proceeds would be placed in a blocked, interest-bearing escrow account. Defendant promptly sought a stipulation from plaintiff that the sale of the Jackson Street Property could proceed under the same conditions. Although plaintiff initially indicated that it would stipulate to the release of the attachment, plaintiff subsequently began adding additional conditions to the agreement. Unable to reach agreement, and with the close of escrow approaching, defendant filed its Motion to Release Attachment on November 3, 2006, and sought a hearing on shortened time. Despite filing the motion, defendant continued to discuss a stipulation with plaintiff.

On November 8, 2006 – the deadline defendant asked the Court to set for opposition papers – plaintiff filed its opposition to the Motion to Release Attachment. It did not oppose the separately filed motion to shorten time. On that same day, plaintiff for the first time requested that defendant provide an appraisal for the Jackson Street Property. Although it did not have an appraisal of the property in its possession at the time, defendant obtained an appraisal from the prospective buyer. Defendant's counsel emailed the document to plaintiff's counsel on November 10, 2006.[1]

On November 13, 2006, the Court scheduled a telephonic hearing on defendant's Motion to Release Attachment. That hearing was subsequently continued to November 14th. During that hearing, Magistrate Judge Laporte permitted both sides to address the merits of defendant's motion. At the conclusion, the Court entered an order granting the motion and releasing the attachment on the

---

[1] Defendant filed its reply papers on November 13, 2006.

2

OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR STAY OF EFFECT OF ORDER
AND FOR REVIEW UNDER FRCP 72(A)
C99-3073 MMC

Jackson Street Property subject to nearly identical conditions as were applied to the previous sale of defendant's attached property. Magistrate Judge Laporte specifically denied plaintiff's oral request to stay her ruling. Shortly after the hearing, plaintiff filed this "emergency motion."

### III.    ARGUMENT

All of the arguments raised in plaintiffs' "Emergency Motion for Stay of Effect of Order" were presented to Magistrate Judge Laporte, both in writing and in oral argument. Notwithstanding plaintiff's claim that it was deprived of due process, it is undisputed that plaintiff briefed and argued this matter to the Court. In granting defendant's Motion to Release Attachment, Magistrate Judge Laporte declined to issue a stay of her order, because to do so would badly prejudice the defendants.

Putting aside this unsupported "due process" claim, none of plaintiff's other arguments warrant a stay or reversal of the November 14 Order.[2] The sale, of which plaintiff's counsel has long been aware, is scheduled to close on Wednesday, November 15, 2006, at a fair and reasonable price. As explained more fully in the November 14 Order, the net sales proceeds will be put in a frozen, interest bearing account. This sale, however, is highly likely to fall through completely if the sale is forestalled. Market prices have gone down since the sales contract was signed, and there is every indication the buyer will look elsewhere should this transaction be stalled. It is unlikely defendant Kiritchenko could obtain as favorable a purchase price in the foreseeable future.

Plaintiff's counsel erroneously argues "the urgency by which Kiritchenko is seeking to have the sale allowed is by itself highly suspicious." Plaintiff's counsel was advised that defendant intended to sell the property in August of 2006, and initially indicated that it would stipulate to the release of the attachment so that the sale could proceed. On August 28, 2006, plaintiff's counsel informed defendant that UTI agreed with the sale in concept, but wanted some discovery concessions as a condition to lifting the attachment on the property. Believing the sale was in everyone's best interests, defendant's counsel did not think there would be difficulty in reaching a stipulation to lift the stay. On October 24, 2006, however, plaintiff's counsel wrote that UTI now wanted to be paid

---

[2] Once again, defendant will refrain from addressing plaintiff's irrelevant and unsupported allegations as to defendant's alleged wrongdoings and fraud.

1  $1,000,000 as a condition to the stipulation. At that point defendant's counsel realized a motion to
2  lift the attachment was necessary so the sale could go through without such outrageous conditions.
3  Thus the "urgency" about which plaintiff complains was actually created by plaintiff's own conduct,
4  and not by defendant.

5  Plaintiff's attack on the fairness of the sales price for the Jackson Street Property misstates or
6  over looks several important facts, and should also be rejected. First, plaintiff argues that the sale
7  was not at "arms' length" because the buyer is the current tenant at the Jackson Street Property, as
8  though that "connection" somehow taints the sale. Plaintiff's argument is without merit. As plaintiff
9  is or should be aware, the prospective buyer, Robert D. Alvarez, is a prominent investment banker,
10 with an undergraduate and MBA degrees from Stanford University, and a Trustee for the California
11 Academy of the Sciences. He has no relationship to Kiritchenko other than being a tenant, and
12 plaintiff offers absolutely no evidence to suggest otherwise.

13 Plaintiff's motion also relies heavily on plaintiff's own unsupported and inadmissible
14 speculation as to the value of the Jackson Street Property. For example, plaintiff's repeated
15 references to the price at which Kiritchenko purchased the property are irrelevant, as he purchased
16 the two unit building for one price, and now is selling one unit. One cannot simply divide the overall
17 value of the building in half to determine the value of each unit, because the two units are very
18 different. That fact has been confirmed by the appraisal obtained by the prospective buyer, and
19 produced to plaintiff upon request. The appraiser is reputable, state certified, and he prepared the
20 appraisal on behalf of the buyer's lender, First Republic Bank. Contrary to plaintiff's claim, a
21 review of the appraisal shows it was not limited to confirming that the property was worth enough to
22 support the loan; the appraisal gives a reasoned determination of the actual the fair market value of
23 the property.

24 Nor is there any merit to plaintiff's attack on the appraisal based on price per square foot
25 comparisons. That argument – that the price per square foot for one condominium should naturally
26 be the same as the price for square foot for another similarly sized unit shows no understanding of
27 the San Francisco real estate market, where price per square foot can vary radically depending on
28 location and views. It is commonly understood that the old maxim "location, location, location,

4

applies with even greater force in San Francisco, where a Victorian in Haight Ashbury would be worth a fraction of the same house placed on a hill in Pacific Heights overlooking the Bay. What plaintiff overlooks or simply fails to mention is that the appraisal carefully explains that the Kiritchenko property, on a noisy and busy intersection, is inferior in views, location, and condition to the comparables which sold for higher prices per square foot.

Plaintiff's "emergency motion" also overlooks the fact that the Court has previously granted a similar request to release an attachment on one of defendant's properties subject to similar conditions. As with the prior sale of the Wilshire Property, defendant did not request the unconditional release of the attachment on the Jackson Street Property, but instead sought an order releasing the attachment subject to the net sales proceeds being placed in a blocked and frozen, interest-bearing account until this litigation is resolved.

As explained more fully in Defendant's Motion to Release Attachment, the proposed arrangement is beneficial to both plaintiff and defendant because it preserves the value of a real property asset that is facing potential loss of value in the currently declining market. At the same time, permitting the sale of the property relieves defendant of the ongoing burden of significant property taxes and the maintenance costs for the property. If Magistrate Judge Laporte's order is reversed or stayed, however, both plaintiff and defendant will lose out because the deadline for close of escrow will pass and the sale will be lost.

## IV.   CONCLUSION

In short, Magistrate Judge Laporte's granting of the motion to lift the attachment was correct, and her refusal to grant a stay of her order was necessary to avoid prejudice to defendant. Defendant respectfully submits that plaintiff's current "Emergency Motion for Stay of Effect of Order" should be denied for the same reasons, and the Court should affirm the November 14, 2006 Order of Magistrate Judge Laporte granting defendant's Motion to Release Attachment.

Dated: November 15, 2006        KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

BY: _____/s/_____
THOMAS H. SLOAN, Jr.
Attorneys for Defendant PETER KIRITCHENKO