IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL TRADING & INVESTMENT COMPANY, a Massachusetts corporation,<br><br>Plaintiff,<br><br>v.<br><br>PETRO MIKOLAYEVICH KIRITCHENKO, an individual, et al.,<br><br>Defendants | No. C-99-3073 MMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO ENTER DEFAULT OF DEFENDANTS BRANCROSS (CAYMAN) LTD. AND BRANCROSS LTD.; DENYING PLAINTIFF'S ADMINISTRATIVE MOTION TO STRIKE OPPOSITION OR, IN THE ALTERNATIVE, FOR LEAVE TO SERVE PROCESS ON PETRO KIRITCHENKO**<br><br>(Docket Nos. 1162, 1202) |

Before the Court is plaintiff Universal Trading and Investment Company's ("UTI") motion, filed December 28, 2006, for entry of default against defendants Brancross (Cayman) Ltd. ("Brancross Cayman") and Brancross Ltd. ("Brancross Isle of Man") (jointly, "Brancross Defendants"). Defendant Petro Kiritchenko ("Kiritchenko") has filed opposition to the motion. On January 19, 2007, in lieu of a reply, UTI filed an administrative motion to strike Kiritchenko's opposition, or in the alternative, for leave to serve process on Kiritchenko on behalf of the Brancross Defendants and defendant the Zeneta Foundation ("Zeneta").[1]  Kiritchenko has filed opposition to UTI's administrative motion, as well as evidentiary objections to the affidavit of Dr. W. Scott Thompson ("Thompson") in support

---

[1] On January 3, 2007, the Court issued an order denying UTI's motion for entry of default against Zeneta.

1 thereof. Having considered the papers filed in support of and in opposition to the motions, the Court finds the motions appropriate for decision without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the February 2, 2007 hearing. For the reasons sets forth below, UTI's motions are DENIED.

### 1. Administrative Motion to Strike Opposition

The Court first addresses UTI's administrative motion, filed pursuant to Civil Local Rule 7-10, to the extent UTI seeks an order striking Kiritchenko's opposition to the motion for entry of default. UTI's motion is not properly brought pursuant to Civil Local Rule 7-10, which governs the filing of ex parte motions and requires that such motions "include a citation to the statute, rule or order which permits the use of an ex parte motion to obtain the relief sought." See Civil L.R. 7-10. UTI has failed to comply with such requirement. Moreover, even if the Court were to consider UTI's administrative motion, UTI's contention that Kiritchenko lacks standing to oppose entry of default against the Brancross Defendants is inconsistent with UTI's argument, set forth in the same motion, that UTI should be permitted to serve Kiritchenko as the "settlor, full beneficiary and principal" of the Brancross Defendants, (see Administrative Motion at 4:7-9), and that the Brancross Defendants are "Kiritchenko's money laundering corporate instrumentalities," (see Thompson Aff. ¶ 3). Finally, even if the Court were to strike Kiritchenko's opposition, UTI, as discussed below, has failed to demonstrate its entitlement to entry of default against the Brancross Defendants.

Accordingly, UTI's administrative motion, to the extent UTI seeks an order striking Kiritchenko's opposition to UTI's motion for default, will be DENIED.

### 2. Motion to Enter Default

Entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend[.]" See Fed. R. Civ. P. 55(a). A party has no duty to defend, however, unless it has been served with the summons and complaint, or waives such service, pursuant to Rule 4 of the Federal Rules of Civil Procedure. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344,

350 (1999); Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Rule 4]."); see also Fed. R. Civ. P. 4(c)(1) ("A summons shall be served together with a copy of the complaint."); Fed. R. Civ. P. 4(d) (providing for request for waiver of service and waiver of service). Consequently, unless the Brancross Defendants were properly served with the summons and complaint, the Court may not enter default against them. See id.; see also Select Creations, Inc. v. Paliafito America, Inc., 830 F. Supp. 1223, 1237 (E.D. Wis., 1993) (noting "a default judgment against a defendant who has not been served is void"). "The party asserting the validity of service bears the burden of proof on that issue." See Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993).

### a. Hague Convention

UTI's first argument in support of entry of default is that, pursuant to the requirements of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), UTI served Brancross Cayman in the Cayman Islands, and served Brancross Isle of Man in the Isle of Man. The Federal Rules of Civil Procedure expressly authorize service of process on foreign business entities "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention[.]" See Fed. R. Civ. P. 4(f)(1), 4(h)2). The Cayman Islands and the Isle of Man, as territories of the United Kingdom, are signatories to the Hague Convention. See Hague Convention. "[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies." See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988).

Service pursuant to the Hague Convention may be effected by forwarding the summons and complaint to the "Central Authority" for the country in which service is to be made, along with a form Request For Service containing, inter alia, a form Summary of the Documents to be Served. See Hague Convention arts. 2-5. Once the Central Authority has served a document, it is required to "complete a certificate" stating that "the document

3

has been served and . . . the method, the place and the date of service and the person to whom the document was delivered." See id art. 6.  The Hague Convention expressly provides that "[w]here a . . . summons . . . had to be transmitted abroad for the purpose of service, under the provisions of the [Hague] Convention, and the defendant has not appeared, judgment shall not be given unless it is established that . . . the service or delivery was effected in sufficient time to enable the defendant to defend." See Hague Convention art. 15.

Here, UTI has not demonstrated that it served a summons and complaint on either Brancross Cayman or Brancross Isle of Man.  Although UTI submits as to each Brancross Defendant a declaration from UTI's former counsel that, on December 14, 1999, his "office caused to be served on [each of the Brancross Defendants] . . . a copy of the Amended Complaint and summons," (see Decker Decls. ¶ 2 (attached as third unmarked exhibits to Lambert Decls.)), the certificates submitted by the Central Authorities of the Cayman Islands and the Isle of Man[2] state only that a copy of the complaint was served; the certificates make no mention of a summons, (see Affidavits of Service (attached as fifth unmarked exhibits to Lambert Decls.)).

UTI contends, citing Article 5 of the Hague Convention, that the absence of reference to a summons in the certificates is not dispositive, because the certificate need only contain a "summary" of the documents served.  This argument is unpersuasive. Article 6, not Article 5, addresses the requisite content of certificates of service.[3]  Article 5 merely provides that the part of the request for service that contains the summary shall be served with the documents themselves.  See Hague Convention art. 5.  Moreover, no other

---

[2] The certificates were issued, respectively, by the Bailiff of the Grand Court of the Cayman Islands on behalf of the Clerk of the Courts of the Cayman Islands, and by the First Deemster and Clerk of the Rolls of the Isle of Man.  (See id.); see also http://www.hcch.net.

[3] As noted, Article 6 provides that such certificate shall include the method, place, and date of service, and the person to whom "the document" was delivered.  See Hague Convention art. 6.  As further noted, the only such document referenced in the certificates here at issue is the complaint.

4

document submitted by UTI demonstrates, or even suggests, that a summons was served. With respect to Brancross Isle of Man, neither the request for service nor the summary attached thereto mentions a summons; the only document referenced therein is the complaint. (See fifth unmarked exhibit attached to Lambert Decl. re: Brancross Isle of Man.) With respect to Brancross Cayman, UTI has not submitted a copy of the request for service or any part thereof. Consequently, UTI has not demonstrated that it requested service of a summons on either of the Brancross Defendants, much less that a summons was in fact served on either defendant. Indeed, UTI submits no evidence that a summons addressed to either Brancross Defendant was ever issued.

UTI further argues that service of the summonses is demonstrated "by the fact that the local Central Authorities in both jurisdictions would otherwise have returned the documents pursuant to Article 13 of the Convention." (See Administrative Motion at 3:21-23.) Article 13 provides, in relevant part, that "[w]here a request for service complies with the terms of the [Hague] Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security." See Hague Convention art. 13. Nothing in Article 13 even suggests that a Central Authority may refuse to comply with a request for service that does not include a summons, much less that a Central Authority must do so.

Accordingly, UTI has not demonstrated that it has served either of the Brancross Defendants in compliance with the requirements of the Hague Convention.

### b. Service on Other Defendants on Behalf of Brancross Defendants

UTI next argues that the Brancross Defendants were served "via alternative means," (see Motion at 3:25), specifically, by personal service in the United States on Kiritchenko as well as Brancross U.S. Holdings Inc., BRC Property Holdings LLC and Xanadu Property Holdings LLC, all three of which entities are described by UTI as "California subsidiaries" of the Brancross Defendants. (See id. at 3:19-24.) UTI has submitted no evidence, however, that any of the above-referenced defendants was served with a summons on behalf of either of the Brancross Defendants.

5

Accordingly, UTI has not demonstrated that it has served either of the Brancross Defendants by service on another party to this action.

In sum, UTI has not demonstrated that either of the Brancross Defendants has been served, and its motion for entry of default against the Brancross Defendants will be DENIED.

### 3. Administrative Motion for Leave to Serve Kiritchenko on Behalf of Brancross Defendants and Zeneta

As noted, UTI's administrative motion includes, as an alternative, a request for permission to serve Kiritchenko on behalf of the Brancross Defendants and Zeneta. The procedural deficiencies with respect to UTI's use of an administrative motion have been noted above. In any event, UTI does not need the Court's permission before attempting service of process, and to the extent UTI seeks an advisory opinion from the Court as to whether service on Kiritchenko would constitute effective service on the Brancross Defendants and Zeneta, this Court declines to offer such opinion.

Accordingly, UTI's administrative motion, to the extent UTI seeks leave of court to serve Kiritchenko on behalf of the Brancross Defendants and Zeneta, will be DENIED.[4]

### CONCLUSION

For the reasons set forth above,

1. UTI's motion for entry of default against the Brancross Defendants is hereby DENIED.

2. UTI's administrative motion is hereby DENIED.

This order terminates Docket Nos. 1162 and 1202.

**IT IS SO ORDERED.**

Dated: January 30, 2007

MAXINE M. CHESNEY
United States District Judge

---

[4] In light of this ruling, the Court has not considered the Thompson affidavit, submitted by UTI as evidence of the current corporate status of the Brancross Defendants and the relationship between such defendants and Kiritchenko, and, consequently, does not reach Kiritchenko's objections to that affidavit.