IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNIVERSAL TRADING & INVESTMENT COMPANY, a Massachusetts Corporation,

Plaintiff,

v.

PETRO MIKOLAYEVICH KIRITCHENKO, an individual, et al.,

Defendants

No. C-99-3073 MMC

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO ENTER DEFAULT AGAINST DEFENDANTS ORBY INTERNATIONAL LTD., SELECTIVE ASSETS LTD., LADY LAKE INVESTMENT LTD., FAIRMONT GROUP LTD., GUARDIAN INVESTMENT GROUP LTD., NEMURO INDUSTRIAL GROUP LTD., AND FIRSTAR SECURITY LTD.; VACATING HEARING**

(Docket No. 1215)

Before the Court is plaintiff Universal Trading and Investment Company's ("UTI") renewed motion for entry of default,[1] filed January 26, 2007, against the following defendants: (1) Orby International Ltd., a British Virgin Islands corporation ("Orby"); (2) Selective Assets Ltd., a British Virgin Islands corporation ("Selective"); (3) Lady Lake Investment Ltd., an Antigua and Barbuda (hereafter, "Antigua") corporation ("Lady Lake"); (4) Fairmont Group Ltd., an Antigua corporation ("Fairmont"); (5) Guardian Investment Group Ltd., an Antigua corporation ("Guardian"); (6) Nemuro Industrial Group Ltd., an

---

[1] UTI initially sought entry of default on July 7, 2000; that motion had not been decided by the time a stay of this action subsequently was ordered.

Antigua corporation ("Nemuro"); and (7) Firstar Security Ltd., an Antigua corporation ("Firstar"). Defendant Pavel Lazarenko ("Lazarenko") has filed opposition to the motion; UTI has filed a reply. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, see Civil L. R. 7-1(b), hereby VACATES the March 2, 2007 hearing, and rules as follows.

## DISCUSSION

UTI asserts all seven of the above-referenced defendants have been served pursuant to the Hague Convention on Service Abroad of Judicial and Non-Judicial Documents in Commercial and Civil Matters (hereafter "Hague Convention" or "Convention"). In the alternative, UTI asserts, six of the above-referenced entities, specifically, Orby, Lady Lake, Nemuro, Fairmont, Guardian, and Firstar, were served by "serving their owner and principal Pavel Lazarenko . . . at the Federal Correctional Institute in Dublin, California." (See Mot. at 2:13-14.) UTI contends it is entitled to the entry of default against all seven of said defendants because "no answer or response was filed by any of [them]." (See id. at 6:15-16.) In opposition, Lazarenko argues entry of default is improper because the above-referenced defendants were never properly served and, in any event, such defendants did not fail to "plead or otherwise defend."[2] (See Opp. at 4:1-3.)

**A. Legal Standard**

Entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. . . ." See Fed. R. Civ. P. 55(a). A party has no duty to defend, however, unless it has been served with the summons and complaint, or waives such service, pursuant to Rule 4 of the Federal Rules of Civil Procedure. See Murphy Bros., Inc. V. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (holding "one becomes a party officially, and is required to take action in that

---

[2] Additionally, Lazarenko's opposition argues against entry of default judgment. Because the instant motion seeks only entry of default, however, such argument is premature.

2

capacity, only upon service of a summons"); see also Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Rule 4]."). "Once service is challenged, [the] plaintiff[ ] bear[s] the burden of establishing that service was valid under Rule 4." See Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).

### B. Service Pursuant to Hague Convention

Rule 4 of the Federal Rules of Civil Procedure expressly authorizes service of process on foreign business entities, such as the corporate defendants here, "by an internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention . . . ." See Fed. R. Civ. P. 4(f)(1), 4(h)(2). Here, the United States, the British Virgin Islands, and Antigua are signatories to the Hague Convention. See Hague Convention. Accordingly, "[b]ecause service of process was attempted abroad, the validity of that service is controlled by the Hague Convention." See Brockmeyer, 383 F.3d at 801; see also Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988) ("[C]ompliance with the Hague Convention is mandatory in all cases to which it applies.").

Service pursuant to the Hague Convention may be effected by forwarding the summons and complaint to the "Central Authority" for the country in which service is to be made, along with a form Request For Service containing, inter alia, a form Summary of the Documents to be served. See Hague Convention Arts. 2, 3, and 5. Once the Central Authority has completed service, it must "complete a Certificate in the form of the model annexed to the . . . Convention," detailing "the method, the place, and the date of service" or explaining why service did not occur, and thereafter must forward the completed Certificate "directly to the applicant." See id. Art. 6.

### a. Service on Orby and Selective

In order to effect service on both Orby and Selective, UTI sent copies of the summons and complaint, attached to Request for Service forms, to the Registrar of the

1 Supreme Court of the British Virgin Islands, the Central Authority of that country, in
2 compliance with the requirements of the Hague Convention.  (See Lambert Decl. ¶¶ 16-18
3 and Exs. H and I.)  As required under the Hague Convention, the Deputy Registrar
4 thereafter completed Certificates and forwarded them to UTI.  (See id.)  The returned
5 Certificates state Orby was "served on Wednesday August 23, 2000 at about 11:20 a.m.,"
6 by delivery to Orby's registered agent, Morgan & Morgan Trust Corp. Ltd., (see Lambert
7 Decl. Ex. H at 4), and that Selective was "served on Monday August 21, 2000 at about
8 11:35 a.m.," by delivery to Selective's registered agent, Citco (BVI) Ltd., (see id. Ex. I at 4).

9       In opposition to the instant motion, Lazarenko argues service on Orby and Selective
10 under the Hague Convention "did not take place until after [UTI] moved for default" in 2000.
11 (See Opp. at 7:9-13) (emphasis in original).  The motion before the Court, however, is a
12 renewed motion, filed after service on Orby and Selective was effected.  Consequently,
13 contrary to Lazarenko's argument, the motion does not fail based on the timing of service.
14 Lazarenko additionally contends that "genuine questions as to the validity of [the] executed
15 certificates exist."  (See id. at 7:15-16.)  Lazarenko fails to identify any irregularity or
16 deficiency in the Certificates, however.  Hence, such argument likewise is unpersuasive.

17       Consequently, for the reasons set forth above, service of process on Orby and
18 Selective was properly effected under the applicable provisions of the Hague Convention.

19       As discussed above, when service of process is effected on a defendant and such
20 defendant fails to "plead or otherwise defend[,]" entry of default against such defendant is
21 proper.  See Fed. R. Civ. P. 4(a).  Lazarenko argues, however, entry of default is improper
22 because Orby and Selective did not fail to "plead or otherwise defend" in this action.
23 According to Lazarenko, the pending summary judgment motion challenging UTI's standing
24 constitutes a responsive filing "intended to 'otherwise defend' a lawsuit within the meaning
25 of Rule 55(a) so as to prevent entry of default."  (See Opp. at 5:16-22.)  Neither Orby nor
26 Selective joined in the summary judgment motion, however.  Accordingly, Lazarenko's
27 argument that Orby and Selective have "otherwise defend[ed]" the instant motion fails.

28       As Orby and Selective have been served, but have "failed to plead or otherwise

4

defend," see Fed. R. Civ. P. 55(a), plaintiff's motion for entry of default against Orby and Selective will be granted.

### b. Service on Antigua Defendants

UTI contends service was effected on Lady Lake, Fairmont, Guardian, Nemuro, and Firstar ("Antigua defendants") under the Hague Convention by forwarding five sets of the summons and complaint, accompanied by the requisite Request For Service forms, to the Central Authority for Antigua on August 2, 2000. (See Lambert Decl. ¶¶ 16, 18.) The Central Authority for Antigua failed to return to UTI the Certificates of service indicating that service was completed, however. (See id. ¶¶ 20-23.)

Despite the absence of the Certificates of service, UTI argues, entry of default against the Antigua defendants nonetheless is proper under Article 15 of the Hague Convention. Article 15 provides:

> Each Contracting State shall be free to declare that the judge . . . may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled –
>
> a) the document was transmitted by one of the methods provided for in [the] Convention,
>
> b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
>
> c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

See Hague Convention Art. 15.

According to UTI, the requirements of Article 15 have been fulfilled because more than "six months" have elapsed from the time UTI submitted the copies of the summons and complaint to the Central Authority for Antigua and no Certificate of any kind has been received even though UTI "and its counsel in Antigua . . . undertook diligent steps and inquiries to obtain the executed Certificates."[3] (See Mot. at 4:8.)

---

[3] UTI contends it received "oral acknowledgment of the service" when it contacted the Governor's office of Antigua. (See UTI's Mot. at 4.)

With respect to condition (a) of Article 15, UTI's President attests that UTI, on August 2, 2000, "submitted by Express Mail Requests to Serve" to the Central Authority for Antigua and included copies of the summons and complaint. (See Lambert Decl. ¶¶ 16, 19.) Because UTI transmitted the documents by a method authorized in the Convention, UTI has demonstrated that condition (a) of Article 15 has been satisfied. See Hague Convention Art. 15(a).

In addition, condition (b) has been satisfied, because the period of time that has elapsed from the date of transmittal of the documents is more than six months. See Hague Convention Art. 15(b).

UTI has failed, however, to demonstrate compliance with the "every reasonable effort" requirement of condition (c). Although UTI's President attests that UTI made "various efforts to obtain" the Certificates, (see Lambert Decl. ¶ 23), UTI fails to state what those "various efforts" were, other than the placing of a single call to the Antigua Governor's office on June 12, 2001. (See id. at ¶ 22.) Neither party has cited any case interpreting the reasonable diligence requirement of Article 15(c), and the only case the Court has located in which compliance with Article 15(c) was found is Silverman v. Iberico, No. 89-0432-OG, 1990 U.S. Dist. LEXIS 5264, at *3 (D.D.C. April 30,1990). In Silverman, the district court found the plaintiff therein had satisfied the requirement of Article 15(c) in light of what the court described as the plaintiff's "correspondence and follow-up inquiries to the appropriate officials." See id. at *3. Here, by contrast, UTI submits evidence only that it made a single telephone call, and does not attest that any "follow-up inquiries" were made. Consequently, UTI has not submitted sufficient evidence to demonstrate that UTI expended "every reasonable effort" to obtain the Certificates, and thus has not demonstrated that all the conditions of Article 15 have been satisfied.

Accordingly, UTI has not shown that service of process on any of the Antigua defendants was in compliance with the requirements of the Hague Convention.

**C. Service on Lazarenko on Behalf of the Antigua Defendants**

UTI argues, in the alternative, that service on the Antigua defendants and Orby was

1 accomplished by "serving their owner and principal [Lazarenko] at the federal [prison] on
2 May 17, 2000."[4]  (See Mot. at 2:12-14.)  UTI has submitted copies of proofs of service
3 certifying that the sheriff served Lazarenko in prison as an "agent for service" for each of
4 the Antigua defendants on May 17, 2000 at 3:00 p.m.  (See Lambert Decl. Ex. A.)

Although Lazarenko, in his opposition, questions whether the summons and complaint were ever delivered to him in federal prison by the sheriff, Lazarenko has submitted no declaration to that effect.  Rather, Lazarenko submits declarations from two attorneys, each of whom attests that he met with Lazarenko on May 17, 2000 at the federal prison, but has "no recollection" of any attempt to serve Lazarenko on that day.  (See Gully-Hart Decl., filed August 11, 2000, at 1; Handwerker Decl., filed August 11, 2000, at 1.)  Such declarations are insufficient to raise a genuine issue as to whether the sheriff, in fact, delivered the summons and complaint to Lazarenko.

With respect to whether such delivery constitutes service, the Federal Rules of Civil Procedure provide that service upon a foreign corporation can be effected in the United States "pursuant to the law of the state in which the district court is located," see Fed. R. Civ. P. 4(e)(1) and 4(h)(1), or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process," see Fed. R. Civ. P. 4(h)(1).  With respect to state law, § 416.10 of the California Code of Civil Procedure provides that "[a] summons may be served on a corporation by delivering a copy of the summons and the complaint . . . [t]o the person designated as agent for service of process . . . , the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process."  See Cal. Code Civ. Proc. § 416.10.

---

[4] In light of the above ruling that Orby was served pursuant to the Hague Convention, the Court does not reach UTI's alternative argument that Orby was served by means of service on Lazarenko.

7

UTI does not argue that Lazarenko is "an officer" of any of the Antigua defendants or an agent "authorized by appointment or by law" to receive service on their behalf, or that Lazarenko comes within any of the categories of persons set forth in Section 416.10 of the California Code of Civil Procedure. Rather, UTI contends Lazarenko is a "managing or general agent" for the Antigua defendants and, as such, is a proper person to receive service on their behalf pursuant to Rule 4(h)(1). Specifically, according to UTI, Lazarenko is the "beneficial owner" of the Antigua defendants, which gives him "both the means and discretion" of a "managing or general agent." (See UTI Annex at 6:6-14.) In support thereof, UTI submits a letter from Lazarenko to the European Federal Credit Bank in Antigua ("Eurofed Bank"), in which Lazarenko states that the Antigua defendants are his "nominee International Business Corporations," and requests the withdrawal of funds from his "nominee account, Nemuro Industrial Group Ltd. at Eurofed Bank." (See Lambert Decl. Ex. J at 1.) UTI additionally submits an affidavit by Lazarenko, filed in a forfeiture action in the United States District Court for the District of Columbia, in which Lazarenko asserted a claim to $85 million "held at Bank of Nova Scotia (Antigua) in the name of the Registrar of the High Court of Antigua . . . , formerly on deposit in accounts held fro [sic] the benefit of . . . Lazarenko at Eurofed Bank." (See id. at 6-7 ¶ 4.) Further, UTI's president attests "Lazarenko's identity, his signature and his diplomatic passport were prominently disclosed in the account opening documents for the offshore accounts of Lady Lake Investment Inc. and Fairmont Group Ltd., opened at SCS Alliance Bank in Nassau, Bahamas, and at Eurofed Bank." (See Lambert Decl. at 6:15-18 and Ex. K.) "As such," UTI argues, Lazarenko "has both the means and discretion in operating and managing these entities," and therefore, he "is most obviously a managing or general agent of these entities . . . who may accept service on their behalf." (See UTI's Annex at 6:9-13.)

"The determination of whether a given individual is a 'managing or general agent' depends on a factual analysis of that person's authority within the organization." See Direct Mail, 840 F.2d at 688 (internal quotations and citation omitted). A "managing or general agent" is defined as follows:

> One occup[y]ing this position typically will perform duties which are 'sufficiently necessary' to the corporation's operations. He should be a 'responsible party in charge of any substantial phase' of the corporation's activity. In brief, it is reasonable to expect that such an agent will have broad executive responsibilities and that his relationship will reflect a degree of continuity. Authority to act as agent sporadically or in a single transaction ordinarily does not satisfy this provision of the Rule.

See Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 423 (9th Cir. 1977) (citation omitted).

UTI has not shown that Lazarenko occupies the status of a "managing or general agent" for the Antigua defendants. UTI does not submit any evidence with respect to Lazarenko's duties or responsibilities in operating the Antigua defendants or the frequency with which he acted on their behalf. Further, UTI has not provided any information regarding any of the Antigua defendants, other than their place of incorporation and the possibility that certain of their assets are maintained at certain banks. The evidence before the Court does not reveal the size of the Antigua defendants, the type of operations they undertake, or the number of employers, if any, they employ. Consequently, the Court cannot determine, based on the current record, whether Lazarenko was a managing or general agent for the Antigua defendants at the time he was served in federal prison.

Alternatively, UTI contends Lazarenko is "the alter ego for the [Antigua defendants]" and, thus, is "the appropriate party for service of process." (See Reply at 1:6.) To support this contention, UTI submits a letter addressed to Antigua's "Registrar in the High Court of Justice" from a "Certified Fraud Examiner" stating that she "represent[s] Mr. Pavel Lazarenko . . . and his International Business Corporations," and that her "clients are beneficial owners" of certain Eurofed Bank accounts, as well as "the owners of 86% of Eurofed Bank (86% of Selective Assets which in turn owns Eurofed Bank)." (See Thompson Decl. Ex G at 1.) The letter further states that certain accounts of the Antigua defendants are maintained at Eurofed Bank. (See id. at 2.)

Normally, a duly organized entity enjoys an identity separate and apart from its shareholders, directors, and officers. See Dole Food Co. v. Patrickson, 538 U.S. 468, 474-74 (2003). The Ninth Circuit has recognized, however, that, an alter ego theory may be

9

1  used to serve a foreign entity by serving its <u>alter ego</u> pursuant to Rule 4.  <u>See</u> <u>Wells Fargo</u>,
2  556 F.2d at 426.  For the <u>alter ego</u> theory to apply, the plaintiff must demonstrate "(1) that
3  there is such a unity of interest and ownership that the separate personalities of the
4  corporation and the individual[ ] no longer exist and (2) that failure to disregard the
5  corporation would result in fraud or injustice."  <u>See</u> <u>Flynt Distribution Co., Inc. v. Harvey</u>,
6  734 F.2d 1389, 1393 (9th Cir. 1984).

7  UTI has not demonstrated the existence of an <u>alter ego</u> relationship between
8  Lazarenko and any of the Antigua defendants.  The evidence UTI submits fails to show a
9  "unity of interest" between Lazarenko and any of the Antigua defendants.  Additionally, UTI
10 does not contend any fraud or injustice would result from the failure to treat Lazarenko as
11 an <u>alter ego</u> of the Antigua defendants.

12 Finally, the Court recognizes that "[d]espite the language of . . . Rule [4], service of
13 process is not limited solely to officially designated officers, managing agents, or agents
14 appointed by law for receipt of process."  <u>See</u> <u>Direct Mail</u>, 840 F.2d at 688.  Rather, it is
15 intended that "[t]he rules [be] applied in a manner that will best effectuate their purpose of
16 <u>giving the defendant adequate notice</u>."  <u>See</u> <u>id.</u> (emphasis added).  Service of process can
17 be made "upon a representative so integrated with the organization that he will know what
18 to do with the papers. . . . [S]ervice is sufficient when made upon an individual who stands
19 in such a position as to render it fair, reasonable and just to imply the authority on his part
20 to receive service."  <u>See</u> <u>id.</u>

21 The record here, however, does not contain sufficient evidence to warrant a
22 conclusion that Lazarenko occupies "such a position as to render it fair, reasonable and just
23 to imply the authority on his part to receive service" on behalf of the Antigua defendants.  In
24 particular, as noted above, it is not clear what level of control, if any, Lazarenko has over
25 the Antigua defendants and their assets.  Consequently, the Court cannot determine
26 whether "the role played by [Lazarenko] was commensurately large in the structure of the
27 company."  <u>See</u> <u>Direct Mail</u>, 840 F.2d at 688.  In sum, there is insufficient evidence from
28 which an inference can be drawn that Lazarenko's position, rank, and duties are such that it

is reasonable and just to imply that the Antigua defendants would be apprised of the delivery to Lazarenko in federal prison.

Accordingly, UTI has failed to demonstrate service on the Antigua defendants was effected pursuant to Rule 4 of the Federal Rules of Civil Procedure, and, accordingly, the Court will deny plaintiff's motion for entry of default against said defendants.

## CONCLUSION

For the reasons set forth above, UTI's motion for entry of default is GRANTED in part and DENIED in part:

1. To the extent, UTI seeks entry of default against Orby and Selective, the motion is hereby GRANTED.

2. To the extent UTI seeks entry of default against Lady Lake, Nemuro, Fairmont, Guardian, and Firstar, the motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated: February 28, 2007

_____
MAXINE M. CHESNEY
United States District Judge